IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| NASHAWN O. LAW, | : | |
| --- | --- | --- |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 10-1183 |
| v. | : | |
| | : | |
| WARDEN TROY LEVI, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## OPINION

**Slomsky, J.**                                                                               December 8, 2010

### I. INTRODUCTION

Before the Court are Defendants Warden Troy Levi and Captain Knox's Motion to Dismiss, or in the Alternative, for Summary Judgment (Doc. No. 17) and Plaintiff Nashawn O. Law's Response in Opposition (Doc. No. 18). While Defendants set forth multiple reasons for dismissal in their Motion, the Court will address only the issue of exhaustion of administrative remedies because it is dispositive. For reasons that follow, Defendants' Motion to Dismiss will be granted.

### II. PROCEDURAL HISTORY

On January 28, 2008, Plaintiff filed the Complaint (Doc. No. 8) against Defendants Warden Troy Levi, Captain Knox, and Doctor Reynolds[1] in the United States District Court for the Southern District of New York. On March 5, 2010, Chief Judge Loretta A. Preska of the

---

[1] Dr. Reynolds has not been served in this matter. The Motion now before the Court has been filed on behalf of Defendants Levi and Knox only. (Doc. No. 17.) However, for the reasons stated *infra*, Plaintiff's failure to exhaust his administrative remedies prevents him from bringing suit in federal court and serves as the basis for dismissal of his claims against each Defendant, including Dr. Reynolds.

Southern District of New York transferred the case to this Court. ("March 5, 2010 Transfer Order," Doc. No. 1.) On August 5, 2010, this Court issued an Order placing the case is suspense pending the appointment of an attorney from the Civil Rights Panel to represent Plaintiff. (Doc. No. 14.) By this Order, the Court directed that "if Plaintiff wishes this case to return to active status before a Panel attorney is appointed, and to either obtain counsel or represent himself while awaiting the appointment of a Panel attorney, he may at any time submit a letter to the Court requesting the case be returned to active status." (Id.)

On September 15, 2010, Defendants Levi and Knox filed the Motion now before the Court. (Doc. No. 17.) On October 12, 2010, Plaintiff filed his Response in Opposition. (Doc. No. 18.) On November 19, 2010, the Court removed the case from suspense. (Doc. No. 19.) In the November 19, 2010 Order, this Court reasoned that because Plaintiff filed a Response (Doc. No. 18) after the entry of the August 5, 2010 Order, the Response would be considered as the equivalent of a letter requesting the case be returned to active status. Having returned the case to active status, Defendants Levi and Knox's Motion is now ripe for review.

### III. FACTUAL BACKGROUND

In the Complaint, Plaintiff alleges that in November and December 2006, while incarcerated at the Federal Detention Center (FDC) in Philadelphia, Pennsylvania, he was observing a religious fast. He asserts that during his fast he was "[t]aken out of [his] cell and force fed." (Doc. No. 8 at 4.) Plaintiff claims that his mattress on his bed was removed from his cell daily from 8:00 a.m. to 9:00 p.m. and that as a result he was forced to lay on the metal bedframe which caused body sores. (Id.) He also alleges that while fasting, he "was only given one pair of boxer briefs with no cover, sheet, or mattress in [his] cell with cold temperatures."

2

(Id.) Apparently, Plaintiff is claiming that when his mattress was removed, the cover and sheet were also taken from him.

Plaintiff asserts that Defendant Knox ordered that FDC employees turn off the water in Plaintiff's cell and not provide him with water until he broke his fast. Plaintiff alleges he was taken to the medical unit at the FDC on December 4, 2006 where he was force-fed. He asserts that "a white male officer from Eastern District Region" said that Plaintiff was in danger of suffering cardiac arrest due to severe dehydration. (Id.) He alleges that Defendant Reynolds delayed providing him intravenous (I.V.) fluids. Plaintiff alleges "the last thing [he] remember[s] is hearing sirens and waking up thirty days later to be told [he] was in a coma at Jefferson Hospital due to dehydration causing [him] to seizure resulting into a coma." (Id.)

Darrin Howard is an Attorney Advisor employed by the U.S. Department of Justice, Federal Bureau of Prisons (BOP), assigned to the FDC in Philadelphia, Pennsylvania. (Doc. No. 17, Exhibit A ¶ 1.) In Mr. Howard's Declaration attached to Defendant's Motion to Dismiss, he explains the BOP's grievance procedures codified in 28 C.F.R. § 542.10 *et seq*. (Id. ¶¶ 2-4.) He notes that he has access to BOP records, which document every administrative remedy request filed with the BOP. (Id. ¶ 5.) Although BOP records show that Plaintiff has filed three administrative remedy requests with the BOP, each request relates to a circumstance or event related to his confinement at the Federal Correctional Institution (FCI) in Otisville, New York. (Id. ¶¶ 6-11.) There is no record of Plaintiff filing a request or appeal concerning the circumstances raised in this action or concerning any matter related to his confinement at the FDC in Philadelphia. (Id. ¶ 12.)

Plaintiff does not allege that he filed a request or appeal with the BOP concerning the

3

incident which forms the basis of the Complaint. (Doc. No. 8.) In his Response in Opposition to Defendant's Motion to Dismiss (Doc. No. 18), Plaintiff does not dispute that he has failed to file a request or appeal with the BOP and his Complaint makes no such assertion. He argues that the Court should not require him to exhaust his administrative remedies before filing suit in federal court given "the limited authority of the Bureau of Prison in providing relief and the unique nature of Bivens-type claims." (Id. at 3.)

## IV. JURISDICTION

Plaintiff submits that "diversity of citizenship" is the basis for jurisdiction. However, as Chief Judge Loretta A. Preska found in the March 5, 2010 Transfer Order, the Complaint is more properly construed as invoking the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Complaint challenges Plaintiff's conditions of confinement at the Federal Detention Center in Philadelphia, Pennsylvania. The Court will therefore read the Complaint to allege constitutional claims against federal actors pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 430 U.S. 388 (1971), thereby invoking this Court's federal question jurisdiction.

## V. STANDARD OF REVIEW

A court is not permitted to dismiss a complaint for failure to exhaust administrative remedies *sua sponte*. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Rather, "defendants must plead and prove failure to exhaust as an affirmative defense." Id. "In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss." Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002) (quoting Ray, 285 F.3d at 295 n.8).

In Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), the Third Circuit set

4

forth a two-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss. See also Edwards v. A.H. Cornell & Son, Inc., 610 F.3d 217, 219 (3d Cir. 2010). First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211.

Here, given that Plaintiff is proceeding *pro se*, the Court will construe the factual allegations contained in the Complaint liberally, as pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

Additionally, "[g]iven that the exhaustion issue turns on . . . indisputably authentic documents related to" a plaintiff's compliance with grievance procedures, a court may consider a plaintiff's administrative review requests without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir. 2004). Accordingly the Court may consider prison records documenting Plaintiff's history of filing grievances without converting the present Motion into a motion for summary judgment. Id.; see also Wyant v. Clark, No. 02-1346, 2008 WL 435269, at *2 (D. Del. Feb. 14, 2008).

## VI. DISCUSSION

The Prison Litigation Reform Act of 1995 (PLRA) requires that a prisoner exhaust his administrative remedies before bringing suit in federal court. 42 U.S.C. § 1997e(a). Title 42, United States Code, Section 1997e(a) provides: "No action shall be brought with respect to

5

prison conditions under section 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

Exhaustion requires compliance with an institution's deadlines and procedural rules. Woodford v. Ngo, 548 U.S. 81, 90-91 (2006). Although substantial compliance with an administrative remedy scheme will satisfy this exhaustion requirement, substantial compliance does not encompass the "filing of a suit before administrative exhaustion . . . has been completed." Ahmed v. Dragovich, 297 F.3d 201, 209 (3d Cir. 2002).

A federal prisoner exhausts his administrative remedies by complying with the administrative remedy program of the U.S. Bureau of Prisons. This program requires a prisoner initially to attempt informal resolution by presenting the dispute to the staff. 28 C.F.R. § 542.13(a). This attempt at an informal resolution may be waived by the Warden or Administrative Remedy Coordinator if either official determines the prisoner has demonstrated an acceptable reason for bypassing this process. Id. at § 542.13(b).

Following an unsuccessful attempt at an informal resolution, a prisoner must submit a written Administrative Remedy Request. Id. at § 542.14(a). This Request must be submitted within twenty calendar days following the date on which the incident that forms the basis for the Request occurred. Id. A prisoner may be granted an extension of time for filing a Request where the prisoner demonstrates a valid reason for the delay. Id. at § 542.14(b). A valid reason

includes "an extended period of time during which the [prisoner] was physically incapable of preparing a Request." Id. at § 542.14(b).

If not satisfied with the Warden's response to his Request, a prisoner may then appeal such response "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." Id. at § 542.15(a). Finally, if still not satisfied with the Regional Director's response to his appeal, a prisoner may, within thirty days of the date the Regional Director signed the response, appeal this decision to the General Counsel of the BOP. Id.

Here, Plaintiff made no attempt to exhaust his administrative remedies. Although BOP records show Plaintiff has filed three grievances, none involve any matter alleged in the Complaint.[2] While the Court recognizes that it would have been impossible for Plaintiff to comply with the twenty-day submission deadline under § 542.14(a) due to the fact that Plaintiff was in a coma for thirty days following the incident which would have formed the basis for his Request, this fact does not exempt Plaintiff from the requirement that he exhaust his administrative remedies after he came out of the coma and was capable of submitting a grievance with the BOP.

The BOP's administrative process allows a submission beyond this time "[w]here the inmate demonstrates a valid reason for delay." Here, Plaintiff could demonstrate a valid reason for his delay — his being in a coma. However, Plaintiff never requested an extension or otherwise filed an Administrative Remedy Request with the BOP. He made no attempt to exhaust his administrative remedies. Therefore, 42 U.S.C. § 1997e(a) prevents Plaintiff from

---

[2] As stated *supra*, the subject of each grievance is an incident that occurred at FCI Otisville, the institution where Plaintiff is currently incarcerated.

pursuing his claim in federal court.

## VII. CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss the Complaint (Doc. No. 17).

An appropriate Order follows.